| | |
|---|---|
| IN RE BABCOCK & WILCOX ENTERPRISES, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) United States District Court<br>) Western District of North Carolina<br>) Civil Action File No. 3-18-cv-000347-<br>) MOC-DCK (Consolidated with Nos.<br>) 3:18-cv-00349-MOC-DCK and 3:18- |
| This Document Relates to: | ) cv-00350-MOC-DCK) |
| **ALL ACTIONS** | )<br>). |
| | ) |
| PAMELA MARKS, Derivatively on Behalf of BABCOCK & WILCOX ENTERPRISES, INC., | ) State of North Carolina, County of<br>) Mecklenburg, Case No. 18-CVS-<br>) 21193, (N.C. Super. Ct.) |
| | ) |
| vs. | ) |
| | ) |
| E. JAMES FERLAND, ET AL. | ) |
| | ) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Stipulation") is made and entered into by and among the following Parties (as defined herein), each by and through their respective counsel of record, in order to settle and resolve stockholder derivative actions brought on behalf Babcock & Wilcox Enterprises, Inc. ("B&W", the "Company" or the "Nominal Defendant") and to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims (as defined herein), upon the terms and subject to the conditions set forth herein. The Parties are: (1) Mike DeAngelis ("DeAngelis" or "Plaintiff DeAngelis"); (2) Dan Hegeman ("Hegeman" or "Plaintiff Hegeman"); and (3) Bud and Sue Frashier Family Trust ("Frashier Family Trust" or "Plaintiff Frashier Family Trust"), plaintiffs in the above-captioned consolidated stockholder derivative action (the "Federal Derivative Action"); (4) Pamela Marks ("Marks" or "Plaintiff Marks"), plaintiff in the derivative action captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193 (N.C. Super. Ct.—Mecklenburg Cty.) (the "State Derivative Action"); (5) nominal

defendant B&W; and (6) individual defendants Jenny L. Apker, Daniel W. Hoehn, Leslie Kass, E. James Ferland, Stephen G. Hanks, Larry L. Weyers, Thomas A. Christopher, Brian K. Ferraioli, Anne R. Pramaggiore, and Cynthia S. Dubin (collectively, the "Individual Defendants" and together with B&W, the "Defendants").[1]

## I. INTRODUCTION

### A. Procedural History

#### 1. The Federal Derivative Action

The first complaints in the Federal Derivative Action were filed by plaintiffs DeAngelis and Hegeman in the United States District Court for the District of Delaware on February 16, 2018. Plaintiff Frashier Family Trust filed a factually related stockholder derivative complaint in United States District Court for the District of Delaware on February 22, 2018.

On April 23, 2018, the United States District Court for the District of Delaware entered an order consolidating the related derivative actions and appointing co-lead and co-liaison counsel. On June 1, 2018, plaintiffs DeAngelis, Hegeman, and Frashier Family Trust filed a verified consolidated derivative complaint ("Consolidated Complaint"). The Consolidated Complaint alleges that the Individual Defendants—current and former officers and directors of the Company—breached their fiduciary duties of loyalty and good faith by, *inter alia*, materially misrepresenting the true condition and business prospects of the Company's renewable business segment. The Consolidated Complaint further alleges that the Individual Defendants wasted corporate assets, were unjustly enriched, and violated federal securities laws by causing the

---

[1] Although Ms. Kass and Mr. Hoehn are not individually named as defendants in the State Derivative Action, Plaintiff Marks agrees to treat them as Released Parties (as defined herein) for purposes of this Stipulation and Agreement of Settlement.

Company to repurchase its stock at artificially inflated prices and by causing the issuance of false and misleading proxy statements.

More specifically, the Consolidated Complaint alleges that the Individual Defendants issued and caused B&W to issue clear and continuous public misrepresentations about the Company's true financial condition and business prospects. From at least June 2015 through at least August 9, 2017, the Individual Defendants publicly represented that the Company's renewable business segment was its key to growth, success, and profit, as the Company shifted away from its former parent company's coal-based focus. The Consolidated Complaint alleges that B&W hastily collected numerous renewable energy contracts to provide the illusion of success, drawing investors in to support the Company. Though the future of the Company seemed on track to the public, the Individual Defendants failed to build the operational capacity needed to perform on such large contracts in a manner consistent with the Company's budget and schedule. Supposed cost-cutting efforts exacerbated the problems by utilizing inexperienced engineers on several Company project sites. The Consolidated Complaint alleges that the Individual Defendants were well aware of the operational deficiencies and other significant problems that existed with the Company's operations and management, but caused B&W to fail to disclose these material issues. The Consolidated Complaint alleges that the Individual Defendants' breaches of fiduciary duties and violations of law caused B&W to incur substantial losses, including the destruction of B&W's market capitalization; significant harm to the Company's reputation within the business community and in the capital markets and its ability to raise equity capital or debt on favorable terms; higher marginal costs of capital and debt moving forward; costs incurred in connection with the related securities class action brought in the United States District Court for the Western District of North Carolina captioned, *Ollila v. Babcock & Wilcox Enterprises, Inc., et al.*, Case No.

3

3:17-cv-00109-MOC-DCK (W.D.N.C.) (the "Securities Class Action"); costs incurred in connection with the repurchases of Company stock at artificially inflated prices; and compensation unjustly paid to individuals who were simultaneously breaching their fiduciary duties to the Company.

On June 28, 2018, the Federal Derivative Action was transferred to the United States District Court for the Western District of North Carolina, and is now pending before the Honorable Max O. Cogburn, Jr. In the interests of efficiency and judicial economy, the parties agreed to seek a temporary stay of the Federal Derivative Action, subject to Defendants' agreement to provide plaintiffs in the action with (i) copies of all written responses to discovery requests by defendants to plaintiffs in the Securities Class Action; (ii) copies of all documents produced by defendants to the Securities Class Action plaintiffs; (iii) transcripts of all depositions of defendants and their present and former employees, officers, and directors taken in connection with the Securities Class Action; (iv) all written agreements regarding the scope of discovery to be produced by defendants in the Securities Class Action; and (v) any documents produced to other stockholders in connection with any demands for inspection of B&W's books and records that are based on the same facts as those alleged in the Federal Derivative Action. Judge Cogburn entered the parties' proposed stay order August 13, 2018. In accordance with the terms of the temporary stay, the Defendants provided plaintiffs DeAngelis, Hegeman, and Frashier Family Trust with 281,711 pages of documents.

### 2. The State Derivative Action

The State Derivative Action traces back to Plaintiff Marks' demand for the inspection of certain Company books and records pursuant to title 8, section 220 of the Delaware General Corporation Law Code, dated March 16, 2018 (the "Demand"). On March 30, 2018, counsel for B&W responded to the Demand, noting that the Company would produce certain non-privileged

4

Board of Directors (the "Board") and Audit & Finance Committee's minutes and materials dated January 1, 2016 through March 16, 2018 (the "220 Materials"). Plaintiff Marks and the Company subsequently entered into a confidentiality agreement dated April 9, 2018 that governed the production of the 220 Materials. The Company completed production of the 220 Materials on August 30, 2018.

On November 14, 2018, Plaintiff Marks filed a verified stockholder derivative complaint in the State of North Carolina's General Court of Justice, Superior Court Division, County of Mecklenburg (the "*Marks* Complaint") along with a notice to designate the action as a mandatory complex business case. By Order of the Chief Justice of the North Carolina Supreme Court dated November 20, 2018, the designation was granted and the action was assigned to the Honorable Adam M. Conrad of the North Carolina Business Court. The *Marks* Complaint alleges that the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the Company to (i) disseminate false and misleading statements regarding its renewable business; and (ii) operate with deficient internal controls over financial reporting, and contends that the Individual Defendants were unjustly enriched through their receipt of compensation they received while allegedly breaching their fiduciary duties to B&W. The parties to the State Derivative Action filed a joint motion to stay the case in order to facilitate settlement discussions, which Judge Conrad granted on April 10, 2019. The stay has been continued until the entry of the Order and Final Judgment (as defined herein) in the Federal Derivative Action.

**B.     Settlement Negotiations**

On April 17, 2019, Plaintiffs' Counsel (as defined herein) and counsel for the Individual Defendants held a mediation session in New York City (the "Mediation"). The Mediation was conducted under the mediation privilege and supervised by Michelle Yoshida of Phillips ADR. Prior to the Mediation, the Parties exchanged mediation briefs addressing the claims, available

5

defenses, and remedial issues. Plaintiffs' Counsel submitted a detailed settlement demand to counsel for the Individual Defendants on April 10, 2019. Working with the Company, including current members of B&W's Board and its Chief Accounting Officer ("CAO"), counsel for the Individual Defendants responded to Plaintiffs' settlement demand with a counter-offer, which they presented to Plaintiffs' Counsel at the start of the Mediation. In addition to counsel for the Parties, a representative of the Company's D&O insurance carrier, and the carrier's counsel attended and participated in the Mediation, and the Company's counsel consulted with the Company's General Counsel throughout the course of the Mediation. Despite their good faith efforts, after a full day of hard fought, arm's-length negotiations, the Parties were unable to reach agreement on the substantive consideration for a settlement. At the end of the day, the Mediator issued a Mediator's recommendation to resolve the Federal and State Derivative Actions on the terms set forth herein, which the Parties accepted.

## II.     PLAINTIFFS' COUNSEL'S INVESTIGATION, THE CLAIMS, AND THE SUBSTANTIAL BENEFITS OF THE SETTLEMENT

Plaintiffs' Counsel submit that the claims asserted in the Federal and State Derivative Actions on behalf of B&W have merit, and Plaintiffs' entry into this Stipulation and Settlement (as defined herein) is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of the claims alleged. Following their thorough investigation and further evaluation of the claims, defenses and remedies during the course of the Mediation, Plaintiffs and their counsel have concluded that the settlement of the Federal and State Derivative Actions in the manner and upon the terms and conditions set forth in this Stipulation would best serve the interests of the Company and its stockholders in light of the substantial benefits guaranteed by the Settlement and the substantial risks, costs and delays entailed in attempting to improve on the result through further litigation.

6

Plaintiffs' Counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Federal and State Derivative Actions, including, but not limited to: (1) inspecting, analyzing, and reviewing B&W's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting the complaints in the Federal and State Derivative Actions, including the Consolidated Complaint; (3) researching the applicable law with respect to the claims asserted in the Federal and State Derivative Actions and the potential defenses thereto; (4) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (5) reviewing and analyzing the pleadings contained in the Securities Class Action; (6) reviewing and analyzing non-public documents produced by the Defendants over the course of this litigation, including the 220 Materials; (7) researching the Company's internal corporate governance policies, processes, and procedures, as well as those of the Company's peers; (8) preparing extensive damages analyses; (9) preparing and submitting a detailed settlement demand and modified demands over the course of the Parties' settlement negotiations; (10) preparing and submitting a comprehensive mediation statement and carefully evaluating Defendants' mediation statement and response to Plaintiffs' settlement demand; (11) attending and participating the Mediation in New York City; (12) engaging in extensive settlement discussions with the Mediator and counsel for Defendants regarding the specific facts of the Federal and State Derivative Actions, the perceived strengths and weakness of the claims and defenses thereto, and the remedies that might be secured through litigation as compared to those that could be secured through settlement; (13) negotiating the terms of a written memorandum of understanding embodying the principal substantive settlement terms; and (14) negotiating, as well, this comprehensive final Stipulation and Agreement of Settlement.

Based on Plaintiffs' Counsel's thorough evaluation, Plaintiffs and Plaintiffs' Counsel submit that the Settlement set forth in this Stipulation guarantees the adoption of corporate governance reforms that directly address the alleged wrongdoing, and is fair, reasonable, and adequate, and in the best interests of B&W and its stockholders. Accordingly, the Plaintiffs have agreed to settle the Federal and State Derivative Actions upon the terms and subject to the conditions set forth herein.

## III.    DEFENDANTS' DENIAL OF WRONGDOING

The Individual Defendants, each of whom believes she or he has substantial defenses to the claims alleged against them in the Federal and State Derivative Actions, and the Company, have determined that it is in the best interests of the Company that the Federal and State Derivative Actions should be fully and finally settled in accordance with the terms and conditions set forth in this Stipulation, while maintaining each of their defenses to the Federal and State Derivative Actions and without any admission or concession of fault, wrongdoing or liability, in order to avoid further litigation which would be time consuming and expensive, and because of the costs and uncertainties of continued litigation, and that the terms and conditions of the Stipulation are fair, reasonable, and adequate to the Company and its stockholders. Neither this Stipulation, nor any of its terms or provisions, nor entry of the Order and Final Judgment, nor any document or exhibit referred or attached to this Stipulation, nor any action taken to carry out this Stipulation, is or may be construed or used as evidence of the validity of any of Plaintiffs' Released Claims, or as an admission by or against any of the Defendants or any Defendants' Released Persons of any fault, wrongdoing, or concession of liability whatsoever.

## IV.    BOARD APPROVAL

The Board, including each of its independent, non-defendant directors, in an exercise of its business judgment, has concluded that the corporate governance reforms to be implemented and

8

maintained by B&W as a result of the Settlement confer substantial benefits on the Company, and has evaluated and approved the Settlement as being in the best interests of B&W and its stockholders.

## V. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Plaintiffs (on behalf of themselves and derivatively on behalf of B&W), the Individual Defendants, and Nominal Defendant B&W, by and through their respective counsel or attorneys of record, hereby stipulate and agree that, subject to the approval of the Court, the Consolidated Complaint, *Marks* Complaint, Defendants' Released Claims, and Plaintiffs' Released Claims, which are inclusive of the claims that have been or could have been asserted in the Consolidated Complaint and *Marks* Complaint, shall be finally and fully compromised, settled, and released, and the Federal and State Derivative Actions shall be dismissed with prejudice, upon the terms and subject to the conditions set forth herein as follows:

### 1. Definitions

As used in this Stipulation, the following terms have the meaning specified below.

1.1    "Board" means the Board of Directors of B&W.

1.2    "Court" means the United States District Court for the Western District of North Carolina.

1.3    "Company," "B&W," or "Nominal Defendant" means Babcock & Wilcox Enterprises, Inc., and includes all of its subsidiaries, predecessors, successors, affiliates, officers, directors, employees, and agents.

1.4    "Current B&W Stockholder" means any Person (as defined herein) who owned B&W common stock as of the Execution Date (as defined herein) of this Stipulation and who continues to hold their B&W common stock as of the date of the Settlement Hearing.

9

1.5     "Defendants" mean, collectively, the Individual Defendants and Nominal Defendant B&W.

1.6     "Defendants' Counsel" means Alston & Bird LLP, 1201 West Peachtree Street, Suite 4200, Atlanta, Georgia 30309, and Dechert LLP, Three Bryant Park, 1095 Avenue of the Americas, New York, New York, 10036.

1.7     "Defendants' Released Claims" mean collectively all actions, suits, claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, asserted or that might have been asserted in any forum by Defendants' Released Persons against Plaintiffs' Released Persons, which arise out of, are based on, or relate in any way, directly or indirectly, to the institution, prosecution, or settlement of the Federal and State Derivative Actions; *provided, however,* that "Defendants' Released Claims" shall not include any claims to enforce the Settlement nor any claims to enforce the Confidentiality and Nondisclosure Agreements previously entered into by Defendants, Plaintiffs and/or Plaintiffs' Counsel.

1.8     "Defendants' Released Persons" mean each of the Defendants and, to the maximum extent permitted by law, each of Defendants' immediate family members, spouses, heirs, executors, estates, administrators, trustees, assigns, and any trusts in which Defendants, or any of them, are settlors, or which are for the benefit of any Defendants and/or members of his or her immediate family; any entity in which a Defendant, and/or members of his family has a controlling interest; each of the Defendants' present and former attorneys, legal representatives, and assigns in connection with the Federal and State Derivative Actions; Defendants' insurers; and all present and former directors and officers, agents, advisors, employees, affiliates, predecessors, successors, parents, subsidiaries, and divisions.

1.9    "Directors" mean current and former individual members of the Board of Directors of B&W.

1.10    "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 6.1 herein have been met and have occurred.

1.11    "Escrow Account" means an interest-bearing escrow account to be established and maintained by Plaintiffs' Counsel or their agent for the purpose of payment of the Fee and Expense Amount, as provided in Paragraph 5.2 of this Stipulation.

1.12    "Execution Date" means the date this Stipulation has been signed by all the signatories through their respective counsel.

1.13    "Federal Derivative Action" means the above-captioned consolidated stockholder derivative action pending in the United States District Court for the Western District of North Carolina, captioned, *In re Babcock & Wilcox Enterprises, Inc. Shareholder Derivative Litigation*, Case No. 3:18-cv-00347-MOC-DCK.

1.14    "Fee and Expense Amount" means the sum to be paid to Plaintiffs' Counsel for their attorneys' fees and expenses, detailed in Paragraph 5 herein, subject to Court approval, in recognition of the substantial benefits conferred upon B&W and Current B&W Stockholders by the initiation, prosecution, and settlement of the Federal and State Derivative Actions.

1.15    "Final" means the date when a judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. More specifically, it is that situation when (1) either no appeal has been filed and the time has passed for any notice of appeal to be timely filed in the Federal Derivative Action; or (2) an appeal has been filed and the court of appeals has either affirmed the judgment

11

or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying Order and Final Judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.

1.16    "Individual Defendants" mean, collectively, Jenny L. Apker, Daniel W. Hoehn, Leslie Kass, E. James Ferland, Stephen G. Hanks, Larry L. Weyers, Thomas A. Christopher, Brian K. Ferraioli, Anne R. Pramaggiore, and Cynthia S. Dubin.

1.17    "Notice to Current B&W Stockholders" or "Notice" means the Notice of Proposed Settlement, substantially in the form of Exhibit C attached hereto.

1.18    "Order and Final Judgment" means the [Proposed] Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit E.

1.19    "Party" or "Parties" mean, collectively, each of the Plaintiffs (on behalf of themselves and derivatively on behalf of B&W), each of the Individual Defendants, and Nominal Defendant B&W.

1.20    "Person" or "Persons" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.21    "Plaintiffs" mean collectively plaintiffs Mike DeAngelis, Dan Hegeman, Bud and Sue Frashier Family Trust, and Pamela Marks.

1.22    "Plaintiffs' Counsel" means, collectively, (1) Robbins Arroyo LLP, 5040 Shoreham Place, San Diego, California 92122; (2) The Brown Law Firm, P.C., 240 Townsend Square, Oyster

12

Bay, New York 11771; (3) The Rosen Law Firm, P.A., 275 Madison Avenue, 34th Floor, New York, New York 10016; and (4) Holzer & Holzer, LLC, 1200 Ashwood Parkway, Suite 410, Atlanta, Georgia 30338.

1.23 "Plaintiffs' Released Claims" mean all actions, suits, claims, demands, rights, liabilities, and causes of action of every nature, and description whatsoever, including both known claims or Unknown Claims, that have been, could have been, or in the future can or might be asserted in any federal, state or foreign court, tribunal, forum or proceeding by Plaintiffs' Released Persons or any Current B&W Stockholder derivatively on behalf of B&W, against any of Defendants' Released Persons, based upon, arising out of, or related to (a) the allegations, facts, transactions, events, occurrences, acts, disclosures, statements, representations, omissions, or failures to act relating to all matters involved, set forth, referred to, or alleged in any complaint(s) filed in the Federal and State Derivative Actions; and (b) the allegations, facts, transactions, events, occurrences, acts, disclosures, statements, representations, omissions, or failures to act relating to all matters involved, set forth, referred to, or alleged in any other demand on the Board; *provided however*, that "Released Claims" shall not include any claims to enforce the Settlement.

1.24 "Plaintiffs' Released Persons" mean Plaintiffs, Plaintiffs' Counsel and each of their immediate family members, spouses, heirs, executors, administrators, successors, trustees, attorneys, personal or legal representatives, advisors, estates, assigns, and agents thereof.

1.25 "Preliminary Approval Order" means the [Proposed] Order Preliminarily Approving Settlement to be entered by the Court, substantially in the form of Exhibit B attached hereto, including, *inter alia*, preliminarily approving the terms and conditions of the Settlement as set forth in this Stipulation, directing that Notice and Summary Notice be provided to Current

B&W Stockholders, and scheduling a Settlement Hearing to consider whether the Settlement and the Fee and Expense Amount should be finally approved.

1.26    "Released Claims" means Defendants' Released Claims and Plaintiffs' Released Claims.

1.27    "Released Parties" means Defendants' Released Persons and Plaintiffs' Released Persons.

1.28    "Settlement" means the settlement documented in this Stipulation.

1.29    "Settlement Hearing" means a hearing by the Court to review this Stipulation and determine: (i) whether to enter the Order and Final Judgment; and (ii) all other matters related to the Settlement that are properly before the Court.

1.30    "State Derivative Action" means the derivative action pending in the State of North Carolina, County of Mecklenburg captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193.

1.31    "Stipulation" means this Stipulation and Agreement of Settlement.

1.32    "Summary Notice" means the Summary Notice of Proposed Settlement substantially in the form of Exhibit D attached hereto.

1.33    "Unknown Claims" means any of Plaintiffs' Released Claims and Defendants' Released Claims that any Party does not know or suspect exists in his, her, or its favor at the time of the Settlement, including, without limitation, those claims which, if known, might have affected the decision to enter into, or not object to, this Settlement. The Parties expressly waive, relinquish, and release any and all provisions, rights, and benefits conferred by or under section 1542 of the California Civil Code ("§ 1542") or any other law of the United States or any state or territory of

14

the United States, or principle of common law, which is similar, comparable, or equivalent to §

1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to Plaintiffs' Released Claims and Defendants' Released Claims in the Settlement, as the case may be, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Plaintiffs' Released Claims and Defendants' Released Claims that are known or unknown, suspected or unsuspected, contingent or absolute, apparent or unapparent, which do not exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Stipulation of which this release is a part.

## 2.    Settlement Consideration

2.1     In consideration of the full settlement and release of all of Plaintiffs' Released Claims against Defendants' Released Persons, B&W agrees to adopt resolutions and amend Board committee charters and/or the Company's Bylaws within forty-five (45) days of the Effective Date to ensure the adoption, implementation and maintenance of the following corporate governance reforms (the "Reforms"), except as set forth below.

15

A. ·  Enhanced Board Independence and Board Responsibilities

i.       At Least Two-Thirds of the Board Must Be Independent: The Company shall require that, at all times, at least 66% of the members of the Board are not Company executives and compliant with section (b) of the New York Stock Exchange ("NYSE") independence requirements set forth in NYSE corporate governance standards, section 303A.02, except for subsection (b)(iv); provided further that the composition of the Audit & Finance Committee shall meet all relevant NYSE independence requirements set forth in section 303A.02.

ii.      Mandatory Executive Sessions Meetings of the Independent Directors: The Independent Directors shall meet in executive session at least four (4) times annually outside the presence of management directors, in addition to the executive sessions required of specific committees of the Board as set forth below.

iii.     Mandatory Board Meetings: The Board shall meet at least once per quarter.

iv.      Chairman's Role in Setting the Agenda for Standard, Quarterly Board Meetings: The agenda for standard, quarterly Board meetings shall be established by the Chief Executive Officer ("CEO") and the final version of any such agenda shall not be distributed to the entire Board until the CEO has solicited the input of, received feedback from, and included any items sought to be included by the Chairman on the same.

v.       Enhanced Board Responsibilities for Oversight of Strategy and Planning: The Board shall at least annually and more frequently if circumstances or as good governance requires discuss the Company's long-term strategy development and implementation, including:

(a)      reviewing the process for development, approval and modification of the Company's strategy and strategic plan;

(b)      reviewing the key issues, options and external developments impacting the Company's strategy; and

16

(c)     monitoring enterprise risks that may affect the Company and assisting management of the Company in addressing such risks in the Company's strategic plan.

B.     Enhancements to Disclosure and Internal Controls Committee

The Board shall amend its Disclosure Committee's Charter, as reflected in Exhibit A attached hereto.

C.     Audit Committee Oversight of Disclosure and Internal Controls

i.     The Audit Committee Charter shall be amended to ensure, among other things, that the Audit Committee more effectively supervises the Company's public disclosures.

ii.     The Audit Committee shall oversee the work of the Disclosure Committee. The Audit Committee shall meet separately with and review reports from management and the Disclosure Committee at least once each quarter and more frequently if necessary to effectively supervise the Company's disclosure function and specific disclosure issues of particular importance. At least on a quarterly basis, the Audit Committee shall meet with the Chairman of the Disclosure Committee to review the Disclosure Committee's process and recommendations and to evaluate any concerns and recommendations the Disclosure Committee may have.

iii.     The Audit Committee shall, in conjunction with the Chair of the Disclosure Committee, review any financial statements, including, but not limited to, any Form 10-Q, Form 10-K, Form 8-K pertaining to financial statements, or annual proxy statement issued by the Company, to ensure sufficient material risk disclosures. Prior to the issuance of earnings guidance, the Audit Committee shall review and approve any such guidance with the Disclosure Committee to ensure that proposed guidance has a reasonable basis and that all material risks and contingencies are properly disclosed. This review shall include consideration of management representation letters.

17

iv.     The Audit Committee shall review at least quarterly the critical assumptions and material factors on which published financial forecasts or guidance are based, including those relating to the status of any of the Company's contracts/projects. The Audit Committee shall oversee the decision-making pertaining to the potential modification or withdrawal of previously published forecasts or guidance.

v.     The Audit Committee shall receive a written report from the appropriate member of management in in any quarter in which a Red Team Review was conducted by the Company. The written report shall include the meeting minutes from the Red Team Review(s).

vi.     The Audit Committee shall, at least annually, meet with management, the head of the internal audit function, and the independent auditors.

vii.     The Audit Committee shall, at least annually, review and evaluate the capabilities and performance of the lead partner of the independent auditors and confirm the regular rotation of the audit partners. The Audit Committee shall, at least quarterly, meet with management to review and discuss the Company's major financial risk exposures.

viii.     The Audit Committee shall review, in consultation with the full Board, reports from management regarding B&W's material risks and assess the efforts in place to manage such risks at least annually.

D.     Management Assessment of Disclosure and Internal Controls

i.     Management, including the CEO, Chief Financial Officer ("CFO"), and/or CAO, shall annually assess the adequacy of the Company's internal controls, and, in consultation with the Disclosure Committee and the Audit Committee, shall report to the Audit Committee as to the same, and shall report in the Company's Annual Report on Form 10-K any identified material weaknesses, including (without limitation) material weaknesses concerning each of the following:

18

(a)     the communications process regarding the status, progress, costs, and prospects of the Company's pending contracts/projects; and

(b)     the Company's subcontractor reconciliation processes.

ii.     Should management identify any material weaknesses with regard to these or other controls, they shall take corrective action and/or recommend that the Board take corrective action. Such corrective action and/or recommendations shall be summarized in the Company's Annual Report on Form 10-K.

E.     Enhanced Governance Committee Duties

i.     The Charter of the Governance Committee shall be amended to reflect the following additional duties and responsibilities:

(a)     The Governance Committee shall meet in person or telephonically at least once each quarter.

(b)     The Company shall publicly disclose the specific criteria for assessing director performance and skills.

(c)     In accordance with its duties to develop material principles of corporate governance and recommend such principles to the Board, the Governance Committee shall ensure that any agreed upon corporate governance principles or guidelines are widely available to the public, through the Company's website or otherwise.

F.     Enhanced Compensation Committee Duties

i.     The Charter of the Compensation Committee shall be amended to reflect the following additional duties and responsibilities:

(a)     The Compensation Committee shall continuously seek ways to improve the compensation structure for the Company's officers and directors to ensure compensation packages are competitive but not grossly excessive.

(b)     The Compensation Committee shall adopt measures by which executive compensation can be measured against strict, easy-to-understand performance criteria, and shall publish those measures in the Company's annual proxy statement for the preceding year as well as its assessment of performance against those measures, including use by the Compensation Committee of discretionary factors that allow the Compensation Committee to reduce executive compensation for poor performance and/or for causing B&W to undertake excessive risk, in a manner consistent with applicable SEC rules or listing standards. In particular, and among other things, the Board shall present this information in the Company's annual proxy statement in the Compensation Discussion & Analysis ("CD&A") section in a clear, easy-to-understand format, subject to applicable regulatory requirements. Further, the Board shall retain independent legal counsel at the Company's expense to review the quality, accuracy, and completeness of the Company's CD&A disclosures for the Company's annual proxy statements.

(c)     The Compensation Committee shall adopt measures by which incentive compensation shall be tied primarily to performance criteria, and length-of-service criteria shall be used sparingly, if at all. Incentive compensation also shall include risk adjustments where appropriate. Among other things, a percentage of the stock-based awards granted to the CEO and other section 16 officers shall be performance-based with such percentage being consistent with generally recognized compensation practices, and appropriate to the size and scope of the particular individual's position, and multiple long-term financial performance metrics

20

consistent with the Company's long-term business plan must be utilized in determining what is ultimately earned.

(d)    A director shall not serve on the Compensation Committee for more than five (5) consecutive years.

(e)    B&W shall implement a standard practice, consistent with the independence of the Compensation Committee under applicable law, to allow a full Board discussion of B&W's compensation philosophy, programs and implementation on a periodic basis to improve the full Board awareness and understanding of executive compensation. At one Board meeting each year, the Board shall be briefed on the structure of B&W's executive compensation plans and the compensation philosophy upon which such plans are based.

(f)    Where B&W identifies a significant risk that potentially affects executive compensation in a material way, the Compensation Committee shall assess whether and how that risk should be assessed for compensation purposes.

(g)    B&W shall post the amended Compensation Committee Charter on its website.

G.    Site Visits and/or Onsite Inspections

i.    B&W shall require certain B&W management and at least one independent director to conduct at least one on-site inspection/visit each year of a significant project, as determined by the Board or a committee thereof. These visits will be conducted by Internal Audit and will be designed to help to educate senior management and the Company's directors regarding the operating culture of the field, and will provide them a better understanding what happens on site. Following each visit/inspection, Internal Audit shall prepare a report regarding the visit, which shall include a detailed summary of the visit, an explanation of how any information

21

gathered may impact the Company's operations, and recommendations as to any changes that may be necessary or advisable.

        H.     Executive Reports

        i.     At each regularly scheduled Board meeting, the Company's CFO (or his or her designee) shall provide a report as to the Company's financial condition and prospects, including, but not limited to, a discussion of all reasons for material increases in expenses and liabilities, if any, and material decreases in revenues and earnings, if any, management plans for ameliorating or reversing such negative trends and the success or failure of any such plans presented in the past. All Executive Vice Presidents and the CFO shall make reports to the Board regarding their respective areas of responsibility at least quarterly and shall meet at least annually with the non-employee directors of the Company.

        I.     Continuing Director Education

        i.     The Company shall implement and maintain a mandatory orientation and continuing education program designed to familiarize new directors with the Company, its management structure and operations, the industry in which the Company operates, and key legal, financial, and operational issues. Directors shall be provided with information regarding corporate governance and the structure and procedures of the Board and the committees on which the directors will serve.

        ii.     At the Company's expense, provided such expenditure is reasonable, and subject to advance approval in writing by the Company's CEO or CFO, the directors shall periodically attend at least once every two years appropriate Company or external continuing director education programs to help them stay current on corporate governance, best Board

22

practices, financial reporting practices, ethical issues for directors and management, and similar matters.

J.      The Company's retention of the services of a nationally recognized Project Management Consultant to assist with completion of certain U.K. Renewables Projects in the third quarter of 2018, which consultant reports directly to the Board.

K.      The adoption in the second quarter of 2018 of an enhanced process for documenting sub-contractor reconciliation on Babcock & Wilcox Volund A/S ("Volund") projects to address issues arising when Volund receives out of period sub-contractor invoices that exceed end of period estimates for services performed in prior period.

L.      The adoption of a new "Red Team Review" Procedure (Procedure No: B&W 1117-01, effective March 2, 2018), an additional independent, focused review of a proposal or project.

M.      The adoption of a new "Pricing Approval Request" Procedure (Procedure No: B&W 1118-01, effective March 2, 2018), which is designed to establish a consistent review and pre-approval process for proposals prior to submission to the customer.

N.      The adoption of a new "Project Scope Management" Procedure (Procedure No: B&W 1114-01, effective June 1, 2018), which defines the process for identification, classification, documentation, evaluation and authorization of deviations on all B&W projects.

O.      The adoption of a new "Project Risk and Opportunity Management" Procedure (Procedure No: B&W 1106-01, effective June 1, 2018), which is designed to provide guidance for implementation of project risk and opportunity management through the project lifecycle.

P.      The appointment of an additional independent director, non-defendant Kenneth Siegel, to the Board, effective September 6, 2018.

23

Q. The appointment of a new CFO, non-defendant Louis Salamone, effective February 1, 2019.

2.2 The Reforms set forth above shall remain in effect for at least five (5) years from the Effective Date; provided, however, that the Reforms shall not apply if the Company ceases to have a class of securities registered pursuant to section 12 of the Securities Exchange Act of 1934, and provided further that the Board, by a majority vote of the independent directors, after consultation with outside counsel, may, subject to the requirements outlined in sub-paragraphs (a) and (b) below, amend or eliminate any one or more of these Reforms if the Board determines in a good faith exercise of its business judgment that a policy, procedure, control, or agreement term conflicts with the law, regulation or fiduciary duty to B&W:

(a) In the event of a majority vote by the independent directors that a policy, procedure, control, or agreement term should be amended or eliminated, the Board shall make a formal resolution stating the basis for the independent directors' determination; and

(b) Any material changes made pursuant to this Paragraph 2.2 shall be included in B&W's next ensuing quarterly public disclosure, and a copy of any Board resolution amending or eliminating a Reform shall be provided to Plaintiffs' Counsel upon request.

2.3 Defendants acknowledge that the filing, prosecution, and resolution of the Federal and State Derivative Actions was the primary factor in the implementation of Reforms (A) through (I) above. Defendants additionally acknowledge that the filing and maintenance of the Federal and State Derivative Actions was a significant factor in the adoption of Reforms (J) through (Q), set forth above. Defendants further acknowledge and agree that the Reforms confer a substantial benefit on B&W and its stockholders. The foregoing Reforms shall constitute the full and complete consideration for the releases provided herein with respect to each of the Defendants,

24

and the Parties agree that no further relief or consideration shall be provided against the Individual Defendants.

### 3. Procedures for Implementing the Settlement

3.1  Plaintiffs DeAngelis, Hegeman, and Frashier Family Trust shall submit the Stipulation together with its exhibits to the Court, and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, requesting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the method of providing notice of proposed Settlement to Current B&W Stockholders; (iii) approval of the form of Notice attached hereto as Exhibit C and the Summary Notice attached hereto as Exhibit D; and (iv) a date for the Settlement Hearing.

3.2  Within ten (10) business days of the Court's entry of the Preliminary Approval Order, B&W shall: (a) post a copy of the Stipulation and Notice on the Investor Relations portion of the B&W website; (b) cause a Current Report on Form 8-K to be filed with the SEC that attaches the contents of the Summary Notice, and provide a link in the Form 8-K to the Stipulation and Notice that shall be posted on the Investor Relations portion of B&W website; and (c) cause a copy of the Summary Notice to be published one time in Investor's Business Daily's *IBD Weekly Print*. All costs incurred from dissemination of the Notice, Summary Notice, posting and any other notice ordered by the Court shall be paid by B&W.

3.3  After notice as described above is given to Current B&W Stockholders, counsel for plaintiffs DeAngelis, Hegeman, and Frashier Family Trust shall request that the Court hold the Settlement Hearing to finally approve the Settlement and the requested Fee and Expense Amount.

3.4  If the Court approves the Settlement at the Settlement Hearing, plaintiffs DeAngelis, Hegeman, and Frashier Family Trust will jointly request entry of the Order and Final Judgment by the Court, the entry of which is a condition of this Stipulation: (i) finally approving

25

the Settlement set forth in the Stipulation as fair, adequate, and reasonable, and directing its consummation pursuant to its terms; (ii) finally approving the agreed-to Fee and Expense Amount; (iii) dismissing with prejudice all of Plaintiffs' Released Claims against Defendants' Released Persons; (iv) permanently barring and enjoining the institution and prosecution by Plaintiffs' Released Persons and any other Current B&W Stockholder on behalf of B&W against Defendants' Released Persons in any court, tribunal, forum or proceeding of any of Plaintiffs' Released Claims and any claims arising out of, relating to or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Federal and State Derivative Actions; (v) permanently barring and enjoining the institution and prosecution by Defendants' Released Persons of any action against Plaintiffs' Released Persons in any court, tribunal, forum or proceeding of any of the Defendants' Released Claims arising out of, relating to, or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Federal and State Derivative Actions; and (vi) containing such other and further provisions consistent with the terms of this Stipulation to which the Parties hereto consent in writing.

3.5     Within three (3) business days of the entry of the Order and Final Judgment referred to in Paragraph 3.4, Plaintiff Marks will file a notice of voluntary dismissal in the State of North Carolina, County of Mecklenburg that includes a copy of this Stipulation, and requests an Order dismissing with prejudice the case captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193.

### 4.     Releases

4.1     In consideration of the obligations and commitments undertaken by Defendants and the releases by Defendants' Released Persons, which constitute good and valuable consideration, and subject to the terms and conditions of this Stipulation, on the Effective Date, Plaintiffs' Released Persons shall fully, finally and forever release, relinquish and discharge as against

26

Defendants' Released Persons any and all of Plaintiffs' Released Claims, and shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Plaintiffs' Released Claims against Defendants' Released Persons.

4.2     In consideration of the obligations and commitments undertaken by Plaintiffs and the releases by Plaintiffs' Released Persons, which constitute good and valuable consideration, and subject to the terms and conditions of this Stipulation, on the Effective Date, Defendants' Released Persons shall fully, finally and forever release, relinquish and discharge as against Plaintiffs' Released Persons any and all of Defendants' Released Claims, and shall forever be barred and enjoined from instituting, commencing, or prosecuting any and all of Defendants' Released Claims against Plaintiffs' Released Persons.

4.3     Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

## 5.     Plaintiffs' Counsel's Attorneys' Fees and Expenses

5.1     In recognition of the substantial benefits conferred upon B&W as a result of the Settlement and the efforts of Plaintiffs and Plaintiffs' Counsel in this litigation, B&W shall cause its D&O insurance carrier(s) to pay or cause to be paid to Plaintiffs' Counsel attorneys' fees and expenses in the total amount of $1,000,000 (the "Fee and Expense Amount"), subject to Court approval. The independent non-defendant directors of B&W's Board, in the good faith exercise of their business judgment, have approved the agreed-to Fee and Expense Amount in light of the substantial benefits conferred upon B&W as a result of the Settlement and Plaintiffs' Counsel's efforts in this litigation. As with the substantive consideration for the Settlement (i.e., the Reforms), the Fee and Expense Amount was the product of a Mediator's proposal accepted by all of the Parties.

5.2     Within twenty (20) business days after the Court's entry of the Preliminary Approval Order, B&W shall cause its D&O insurance carrier(s) to pay or cause to be paid the agreed-to Fee and Expense Amount to the Escrow Account.  Within ten (10) business days after the issuance of an order from the Court approving Fee and Expense Amount, the Fee and Expense Amount shall be released to Plaintiffs' Counsel notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to appropriate undertakings by Plaintiffs' Counsel to repay those amounts to B&W if such award is reduced or reversed in whole or in part on appeal or further review.

5.3     Payment of the Fee and Expense Amount in the amount approved by the Court shall constitute final and complete payment for Plaintiffs' Counsel's attorneys' fees and expenses that have been incurred or will be incurred in connection with the filing and prosecution of the Federal and State Derivative Actions and the resolution of the claims alleged therein.  Defendants (including their insurer(s)) shall have no obligation to make any payment other than the Fee and Expense Amount as provided herein to any Plaintiffs' Counsel.  Neither Defendants (including their insurer(s)) nor Defendants' Counsel shall have any obligation with respect to how the Fee and Expense Amount is ultimately distributed among Plaintiffs' Counsel.  In the event that as a result of any appeal and/or further proceedings on remand, or successful collateral attack or otherwise, the Fee and Expense Amount is overturned, reduced or does not become Final for any reason, or if the Settlement is terminated, not approved by the Court, or otherwise does not become effective pursuant to Paragraphs 6.1-6.3 hereof, then, within ten (10) business days after receiving notice from B&W's counsel or from a court of appropriate jurisdiction of such event, Plaintiffs' Counsel shall refund to B&W's D&O insurance carrier in an amount consistent with such reversal or modification, the portion of the Fee and Expense Amount paid to them.

Case 3:18-cv-00347-MOC-DCK   Document 56-3   Filed 08/02/19   Page 28 of 72

5.4     Except as otherwise provided herein, each of the Parties shall bear his, her, or its own costs and expenses in connection with the Federal and State Derivative Actions; provided however, that nothing in this Stipulation shall be construed to have any effect upon any Individual Defendant's existing rights to indemnification or advancement from B&W or pursuant to any applicable policy of insurance.

5.5     None of Defendants' Released Persons shall have any liability whatsoever for amounts owed for taxes by Plaintiffs or Plaintiffs' Counsel on account of the payments made or to be made under this Stipulation. All tax liability (if any) in connection with this Stipulation and the Settlement shall be borne solely and exclusively by Plaintiffs or Plaintiffs' Counsel.

5.6     Plaintiffs may apply to the Court for approval of service awards (the "Service Awards") not to exceed $1,500 per plaintiff to be paid out of any Fee and Expense Amount approved by the Court. Defendants shall not object to any such application.

**6.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

6.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the entry by the Court of the Order and Final Judgment substantially in the form of Exhibit E attached hereto;

(b)     the entry of an Order dismissing with prejudice the case captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193;

(c)     the payment of the Fee and Expense Amount in accordance with Paragraph 5 hereof; and

(d)     the Order and Final Judgment having become Final.

29

6.2     If any of the conditions specified in Paragraph 6.1 are not met, or the Settlement is terminated for any reason, the Stipulation shall be canceled and terminated subject to Paragraph 6.3, unless the Parties mutually agree in writing to proceed with the Stipulation, and the Parties shall be restored to their respective positions as of the Execution Date of this Stipulation, and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any of the Parties of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Federal and State Derivative Actions or in any other action or proceeding.  In such event, the terms and provisions of the Stipulation, with the exception of Paragraphs 6.2-6.3, 7.3, 7.6, 7.9, 7.10, 7.11, 7.14 herein, shall have no further force and effect with respect to the Parties and shall not be used in the Federal and State Derivative Actions or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

6.3     If for any reason the Effective Date of the Stipulation does not occur, or if the Stipulation is in any way canceled or terminated or if the judgment specified in Paragraph 6.1(a) is successfully attacked collaterally, then the payments to Plaintiffs' Counsel pursuant to Paragraph 5, and any and all interest accrued thereon since payment, shall be returned to B&W, its designee, and/or its successors within ten (10) business days of receiving notice from Defendants or from a court of appropriate jurisdiction.

### 7.   Miscellaneous Provisions

7.1     The Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.  If any disputes arise out of the finalization of the

30

Settlement itself, the Parties to such disputes shall first meet and confer in an effort to resolve any disputes. If any disputes remain, they will be resolved by the Mediator, first by way of expedited telephonic mediation and if unsuccessful, then by way of final, binding, non-appealable resolution.

7.2    The Parties agree that the terms of the Settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel and with the substantial assistance of the Mediator. The Parties agree that throughout the course of litigation, all Parties and their counsel complied with the provisions of Rule 11 of the Federal Rules of Civil Procedure and all similar state law provisions. Discussions regarding the amount of attorneys' fees for Plaintiffs' Counsel were conducted after the material settlement terms were substantially agreed upon. The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Federal and State Derivative Actions were brought or defended in bad faith or without a reasonable basis.

7.3    Neither the Stipulation (including any exhibits attached hereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, the validity of any of Plaintiffs' Released Claims, or of any fault, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons; or (ii) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties as a presumption, a concession or an admission of, or evidence of, any fault, omission, wrongdoing or liability of any of the Parties, Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons or Plaintiffs' Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Parties,

31

Plaintiffs' Counsel, Defendants' Counsel, Defendants' Released Persons and Plaintiffs' Released Persons may file the Stipulation and/or the Order and Final Judgment in any action brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.4     The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.5     In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit hereto, the terms of this Stipulation shall prevail.

7.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

7.7     The Stipulation and the exhibits attached hereto represent the complete and final resolution of all disputes among the Parties with respect to the Federal and Derivative Actions, constitute the entire agreement among the Parties, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters.

7.8     The Stipulation and the Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Parties.  The Parties agree that this Stipulation will run to their respective successors-in-interest, and they further agree that any planned, proposed or actual sale, merger or change-in-control of B&W shall not void this Stipulation, and that in the event of a planned, proposed or actual sale, merger or change-in-control of B&W they will continue to seek final approval of this Stipulation expeditiously, including but not limited to the settlement terms reflected in this Stipulation and the Fee and Expense Amount.

7.9    All agreements made and orders entered during the course of the Federal and State Derivative Actions relating to the confidentiality of information and documents shall survive this Stipulation.

7.10    Plaintiffs have not assigned, encumbered, or in any manner transferred in whole or in part any of the Released Claims.

7.11    Each counsel or other Person executing the Stipulation or its exhibits on behalf of any of the Parties hereby warrants that such Person has the full authority to do so. The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Parties.

7.12    The Stipulation may be executed by facsimile or with a pdf signature and in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

7.13    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

7.14    This Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Delaware, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Delaware without giving effect to that state's choice-of-law principles.

7.15    The Stipulation shall be deemed drafted equally by all Parties hereto.

7.16    Without affecting the finality of the Order and Final Judgement entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and the Order and final Judgement, and the Parties

33

and their counsel submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and the Order Final Judgement, and for matters arising out of, concerning or relating thereto.

7.17    The waiver by a Party of any breach of the Settlement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of Settlement. The Provisions of the Settlement may not be waived by a writing signed by the affected Party, or counsel for that Party.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated July 22, 2019.

Brian J. Robbins
Craig W. Smith
Shane P. Sanders
Steve R. Wedeking
**ROBBINS ARROYO LLP**
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
csmith@robbinsarroyo.com
ssanders@robbinsarroyo.com
swedeking@robbinsarroyo.com

*Co-Lead Counsel for Plaintiffs in the*
*Federal Derivative Action*

John L. Latham
Susan E. Hurd
Jason R. Outlaw
**ALSTON & BIRD**
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: john.latham@alston.com
susan.hurd@alston.com
jason.outlaw@alston.com

Thomas G. Walker (N.C. State Bar No. 17635)
**ALSTON & BIRD**
Bank of America Plaza
101 South Tryon Street,
Suite 400
Charlotte, NC 28280
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
E-mail: thomas.walker@alston.com

*Counsel for the Individual Defendants in the*
*Federal and State Derivative Actions*

34

Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue
34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
E-mail: pkim@rosenlegal.com

*Additional Counsel for Plaintiffs in the*
*Federal Derivative Action*

Timothy Brown
**THE BROWN LAW FIRM, P.C.**
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
E-mail: tbrown@thebrownlawfirm.net

*Co-Lead Counsel for Plaintiffs in the*
*Federal Derivative Action*

David N. Kelley
Lindsay E. Ray
Kathryn E. Barrett
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
E-mail: david.kelley@dechert.com
lindsay.ray@dechert.com
kathryn.barrett@dechert.com

Ella-Marie Smith (N.C. State Bar No. 35576)
**DECHERT LLP**
100 N. Tryon Street
Suite 4000
Charlotte, NC 28202
Telephone: (704) 339-3100
Facsimile: (704) 339-3101
E-mail: ella.smith@dechert.com

*Counsel for Nominal Defendant Babcock &*
*Wilcox Enterprises, Inc. in the Federal and State*
*Derivative Actions*

35

Corey D. Holzer
**HOLZER & HOLZER, LLC**
1200 Ashford Parkway
Suite 410
Atlanta, GA 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
E-mail: cholzer@ holzerlaw.com

*Counsel for Plaintiff in the State*
*Derivative Action*

1358545

36

# EXHIBIT A

# Babcock & Wilcox Enterprises, Inc.

## Disclosure Committee Charter

This Disclosure Committee Charter ("**Charter**") has been adopted by the Board of Directors (the "**Board**") of Babcock & Wilcox Enterprises, Inc. (the "**Company**"). The Disclosure Committee (the "**Committee**") shall periodically review and reassess this Charter and the Charter may be amended upon approval of the Chief Executive Officer and Chief Financial Officer (the "**Executive Officers**") and ratification by the Audit and Finance Committee of the Board (the "**Audit Committee**").

## I. Purpose and Principal Responsibilities

A.      It is the Company's policy that all disclosures made by the Company to its security holders or the investment community should be accurate and complete and fairly present the Company's financial condition and results of operations in all material respects, and should be made on a timely basis as required by applicable laws and stock exchange requirements.

B.      The Committee shall assist the Executive Officers in fulfilling their responsibility for oversight of the accuracy and timeliness of the disclosures made by the Company. The Committee shall have the primary responsibility for the following tasks, in each case subject to the supervision and oversight of the Executive Officers:

      1.      To review and/or supervise the Company's preparation of (i) annual reports on Form 10-K and each quarterly report on Form 10-Q (collectively, the "**periodic reports**"), current reports on Form 8-K, proxy statements, registration statements and any other information filed with the Securities and Exchange Commission ("**SEC**"), (ii) earnings releases, (iii) all presentations to the financial and investment communities, including to analysts, investment bankers, rating agencies and lenders, (iv) such other disclosures, press releases, presentations, or correspondence as the Committee deems appropriate (collectively, the "**Disclosure Statements**"), and (v) such other information and materials as may be designated from time to time by the Audit Committee.

      2.      To report to the Executive Officers and the Audit Committee all relevant information with respect to the Committee's proceedings.

      3.      To provide a certification to the Executive Officers prior to the filing with the SEC of each periodic report as to the Committee's material compliance with and proper performance of the responsibilities that have been assigned to it.

C.      In discharging its duties, the Chairman of the Committee may delegate any of the foregoing tasks, except for the review of periodic reports, proxy statements, registration

statements and information statements, to two or more members of the Committee as the Chairman deems reasonable; provided that such designated members shall report back to the full Committee regarding such activities. As applicable under the circumstances, at least one designee should be an attorney knowledgeable about SEC rules and regulations with respect to disclosures and at least one designee should be knowledgeable about financial reporting. In so designating members, the Chairman shall give specific consideration to having the Disclosure Statements reviewed by appropriate operating group personnel, as applicable.

D.     The Committee shall have full access to all Company books, records, facilities, and personnel, including the internal auditors.

E.     The Disclosure Committee shall seek out relevant information accumulated by the Company (e.g., information concerning the Company's expansion efforts, the status of the Company's pending projects and contracts), make inquiries when necessary to assure itself of the completeness and reliability of the information on which proposed disclosures are based, and make determinations concerning materiality and legal and/or regulatory requirements, in conjunction with counsel or other advisors, as the Committee deems necessary and appropriate.

## II.  Organization

A.     The membership of the Committee shall be comprised of the following:

- Company's Principal Accounting Officer;
- Company's Controller;
- Head of operational finance;
- Company's Treasurer/Assistant Treasurer;
- Company's Vice President, Investor Relations;
- Company's General Counsel/Assistant General Counsel, Securities;
- Heads of Business Units;
- The Corporate Secretary;
- The head of the Company's communication department; and
- Such other individuals as shall be determined from time to time by management.

B.     Members of the Committee may be replaced, or additional members added, at any time and from time to time as the Executive Officers or the Committee deem appropriate to advance the purpose of the Committee. Notwithstanding the foregoing, the Executive Officers at their option may at any time assume any or all of the responsibilities of the Committee identified in this Charter, including for example, approving Disclosure Statements when time does not permit the full Committee to meet.

C.     One member of the Committee shall be appointed as Chairman from time to time by the Executive Officers, to serve until such time as a replacement shall be so appointed. The Chairman shall be responsible for scheduling and presiding over meetings and

preparing agendas. The Chairman may invite participants (in addition to Committee members) to meetings of the Committee, including representatives of the Company's independent public accountants and outside counsel. Any question of interpretation of this Charter or the Committee's procedures may be determined by any Executive Officer or, in their absence from any meeting, the Chairman.

D.     The Chairman shall meet and consult with the Audit Committee together with the Independent Auditor at least annually.

E.     The Committee shall meet as frequently as circumstances dictate (but, in any event, at least once per quarter). The Chairman, or designee, may call meetings by providing reasonable advance notice of the time and place of the meeting to the members of the Committee.

F.     The Chairman may designate a secretary and assistant secretary to keep minutes of the Committee meetings as appropriate to record the meetings and decisions taken with respect to disclosure issues. If a secretary or assistant secretary is not appointed or present at a meeting, the Committee may designate a member to record the minutes of such meeting. The minutes, or a briefing of the issues discussed and decisions taken with respect to disclosure issues, of each meeting may be distributed by the Chairman, as the Chairman deems appropriate, and shall be made available to the Executive Officers and the Audit Committee.

G.     The Committee may retain and determine funding for independent legal, accounting and other advisors as the Committee deems necessary or appropriate to fulfill its responsibilities. The Committee is empowered to cause the Company to pay the compensation of such advisors.

## III.  Other Responsibilities

A.     The Committee shall also have such other responsibilities as the Executive Officers may assign to it from time to time.

B.     The records of each regular, ad hoc, or other meeting of the Disclosure Committee, including but not limited to minutes, materials, exhibits, and attachments, and all written reports or other communications by or on behalf of the Disclosure Committee, shall be maintained for a period of not less than five (5) years following each meeting, report, and/or communication.

*Effective June 8, 2015*

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Lead No. 3:18-cv-00347-MOC-DCK**
**(Consolidated with Nos. 3:18-cv-00349-MOC-DCK and 3:18-cv-00350-MOC-DCK)**

| | |
|---|---|
| **IN RE BABCOCK & WILCOX** | ) |
| **ENTERPRISES, INC. SHAREHOLDER** | ) |
| **DERIVATIVE LITIGATION** | ) |
| | ) |
| | ) |
| **This Document Relates to:** | ) |
| | ) |
| **ALL ACTIONS.** | ) |
| | ) |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT

WHEREAS, a consolidated derivative action is pending before this Court styled, *In re Babcock & Wilcox Enterprises, Inc. Shareholder Derivative Litigation*, No. 3:18-cv-00347-MOC-DCK (the "Action");

WHEREAS, plaintiffs Mike DeAngelis, Dan Hegeman, and Bud and Sue Frashier Family Trust have made an application, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure ("Rule 23.1"), for an order: (i) preliminarily approving the proposed settlement (the "Settlement") of this Action in accordance with the Stipulation and Agreement of Settlement dated _____ __, 2019 (the "Stipulation"), which, together with the exhibits annexed thereto, sets forth the terms and conditions for the proposed Settlement and dismissal of the Action with prejudice; (ii) approving the form and manner of the dissemination of the Notice and Summary Notice to Current B&W Stockholders, attached as Exhibits C and D, respectively to the Stipulation; and (iii) scheduling a date for the Settlement Hearing (defined below), pursuant to Rule 23.1, for the Court to consider and determine whether to approve the terms of the Settlement as fair, reasonable,

1

and adequate, including the payment of the Fee and Expense Amount, which was separately negotiated by the Parties;

WHEREAS, this Court has considered the Stipulation and the exhibits annexed thereto and the arguments of the Parties; and

WHEREAS, all capitalized terms contained herein shall have the same meanings as set forth in the Stipulation (except as to those capitalized terms defined herein).

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     This Court has jurisdiction over the subject matter of the Action, and the Parties to the Stipulation agreed to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

2.     The Court does hereby preliminarily approve the Stipulation and the Settlement, which is set forth therein, subject to further consideration at the Settlement Hearing.

3.     A hearing (the "Settlement Hearing") shall be held before this Court on _____ __, 2019, at __:__ _.m. at the United States District Court for the Western District of North Carolina, 100 U.S. Courthouse Building, 100 Otis Street, Asheville, NC 28801 to: (i) determine whether the proposed Settlement of the Action is fair, reasonable, and adequate and in the best interests of B&W and its stockholders; (ii) hear and rule on any objections to the proposed Settlement, including the attorneys' fees and expenses Defendants' insurer agreed to pay Plaintiffs' Counsel; (iii) determine whether to approve the agreed-to Fee and Expense Amount; and (iv) determine whether the Court should enter the Order and Final Judgment, attached as Exhibit D to the Stipulation, which would dismiss with prejudice the Federal Derivative Action and release the Plaintiffs' Released Claims and Defendants' Released Claims including any claims

2

related to the Federal and State Derivative Actions that have been brought or could have been brought against the Defendants' Released Persons.

4.     The Court reserves the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to Current B&W Stockholders and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

5.     Within ten (10) business days of the Court's entry of this Order, B&W shall: (a) post a copy of the Stipulation and Notice on the Investor Relations portion of the B&W's website; (b) cause a Current Report on Form 8-K to be filed with the U.S. Securities and Exchange Commission that attaches the contents of the Summary Notice, and provides a link in the Form 8-K to the Stipulation and Notice that shall be posted on the Investor Relations portion of B&W's website at www.babcock.com/questions; and (c) cause a copy of the Summary Notice to be published one time in Investor's Business Daily's *IBD Weekly Print*.  All costs of such Notice and posting and any other notice ordered by the Court shall be paid by B&W.

6.     The form and method of notice provided in the preceding paragraph is the best notice practicable, constitutes due and sufficient notice of the Settlement Hearing to all persons entitled to receive such a notice, and meets the requirements of Rule 23.1, the United States Constitution, and other applicable law.

7.     At least twenty-eight (28) calendar days prior to the Settlement Hearing, Defendants' Counsel shall serve on Plaintiffs' Counsel and file with the Court proof, by affidavit or declaration, of dissemination of the Notice and Summary Notice.

8.     All papers in support of the Settlement and the Fee and Expense Amount shall be filed with the Court and served at least twenty-eight (28) calendar days prior to the Settlement Hearing.  At least seven (7) calendar days prior to the Settlement Hearing, the Parties shall make

3

and serve a filing with the Court that is responsive to any objections that are filed with the Court pursuant to Paragraph 9 below and/or that is in further support of the Settlement.

9.     Any Current B&W Stockholder may object to the Settlement of the Action, the proposed Order and Final Judgment, the proposed Fee and Expense Amount, and may also (but need not) appear in person or by his, her, or its attorney at the Settlement Hearing. To object, such a stockholder must submit copies of: (a) a written statement identifying such person's or entity's name, address, and telephone number, and, if represented by counsel, the name, address, and telephone number of counsel; (b) proof of current ownership of B&W common stock, including the number of shares of B&W common stock and the date or dates of purchase; (c) a written statement explaining the person's or entity's objection and the reasons for such objection; and (d) any documentation in support of such objection. Any objection should not exceed twenty-five (25) pages in length. If the stockholder wishes to appear at the Settlement Hearing, he, she, or it must also include a statement of intention to appear at the Settlement Hearing. Such materials must be filed with the Clerk of the United States District Court for the Western District of North Carolina and sent by first class mail to the following addresses and postmarked at least twenty-one (21) calendar days before the Settlement Hearing:

> Shane P. Sanders
> ROBBINS ARROYO LLP
> 5040 Shoreham Place
> San Diego, CA 92122
>
> Timothy Brown
> THE BROWN LAW FIRM, P.C.
> 240 Townsend Square
> Oyster Bay, NY 11771
>
> *Co-Lead Counsel for Plaintiffs in the Federal Derivative Action*
>
> Corey D. Holzer
> HOLZER & HOLZER, LLC

4

1200 Ashford Parkway, Suite 410
Atlanta, GA 30338

*Counsel for Plaintiff in the State Derivative Action*

-and-

John L. Latham
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309

*Counsel for the Individual Defendants in the Federal and State Derivative Actions*

David N. Kelley
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

*Counsel for Nominal Defendant Babcock & Wilcox Enterprises, Inc. in the Federal and State Derivative Actions*

Any person or entity who fails to object in the manner described above shall be: (i) deemed to have waived any objection to the Settlement, Stipulation, Order and Final Judgment, and the Fee and Expense Amount; (ii) barred from raising such objection in this Action or any other action or proceeding related thereto; and (iii) bound by the Order and Final Judgment and the releases of claims set forth therein.

10. Pending final determination of whether the Settlement should be approved, all proceedings in the Federal Derivative Action and all further activity between the Parties regarding or directed toward the Federal Derivative Action, save for those activities and proceedings relating to the Stipulation and the Settlement, shall be stayed.

11. Pending the Effective Date of the Stipulation or the termination of the Stipulation according to its terms, Plaintiffs and all B&W stockholders derivatively on behalf of B&W are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the

5

commencement or prosecution of any action asserting any of Plaintiffs' Released Claims against Defendants' Released Persons.

12.     The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Current B&W Stockholders.

13.     All Current B&W Stockholders shall be bound by all orders, determinations, and judgments in the Action that pertains to the Settlement.

14.     The provisions contained in the Stipulation (including any exhibits attached hereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Federal and State Derivative Actions or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Actions or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Parties may file the Stipulation and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15.     In the event that the Stipulation or Settlement is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions in the Federal and State Derivative Actions as of the last date before the execution of the Stipulation, and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice the Parties, shall not be deemed or construed to

6

be an admission by any Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Action or in any other action or proceeding. In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Parties and shall not be used in the Federal and State Derivative Actions or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

16.     In the event the Order and Final Judgment fails to become final, then it shall be the obligation of Plaintiffs' Counsel to make appropriate refunds or repayments to B&W's insurance carrier of any attorneys' fees and expenses previously paid within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction in an amount consistent with any reversal or modification, the portion of the attorneys' paid to them.

IT IS SO ORDERED.

DATED: _____          _____
                                                             THE HONORABLE MAX O. COGBURN, JR.

7

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Lead No. 3:18-cv-00347-MOC-DCK**
**(Consolidated with Nos. 3:18-cv-00349-MOC-DCK and 3:18-cv-00350-MOC-DCK)**

|  |  |
|---|---|
| **IN RE BABCOCK & WILCOX ENTERPRISES, INC. SHAREHOLDER DERIVATIVE LITIGATION** | ) ) ) |
|  | ) |
|  | ) |
| **This Document Relates to:** | ) |
|  | ) |
| **ALL ACTIONS.** | ) |
|  | ) |

**NOTICE OF PROPOSED SETTLEMENT**

**TO:** **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF COMMON STOCK OF BABCOCK & WILCOX ENTERPRISES, INC. ("B&W" OR THE "COMPANY") WHO CURRENTLY OWN B&W COMMON STOCK AND WHO OWNED IT AS OF _____ \_\_, 2019 ("CURRENT B&W STOCKHOLDERS") (EXCLUDING DEFENDANTS) AND THEIR SUCCESSORS-IN-INTEREST.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF STOCKHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY LEGAL PROCEEDINGS IN THESE ACTIONS.**

**PLEASE NOTE THAT THIS ACTION IS NOT A "CLASS ACTION" AND NO INDIVIDUAL STOCKHOLDER HAS THE RIGHT TO BE COMPENSATED AS A RESULT OF THE SETTLEMENT OF THESE ACTIONS.**

YOU ARE HEREBY NOTIFIED, pursuant to an order of the United States District Court for the Western District of North Carolina (the "Court"), that a proposed Settlement[1] has been reached between and among Defendants and plaintiffs Mike DeAngelis, Dan Hegeman, and Bud and Sue Frashier Family Trust in the above-captioned consolidated stockholder derivative action (the "Federal Derivative Action"), and between and among Defendants and plaintiff Pamela Marks in an additional stockholder derivative action captioned, *Pamela Marks v. E. James Ferland et al.*, Case No. 18-CVS-21193 (N.C. Super. Ct.—Mecklenburg Cty.) (the "State Derivative Action") (together with the Federal Derivative Action, the "Actions"). This Notice of Proposed Settlement ("Notice") is not an expression of any opinion by the Court with respect to the truth of the allegations in the Federal and State Derivative Actions or the merits of the claims or defenses asserted by or against any party. It is solely to notify you of the terms of the proposed Settlement, and your rights related thereto. The terms of the proposed Settlement are set forth in the Stipulation which has been filed with the Court and is attached hereto. This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation.

## I. WHY THE COURT HAS ISSUED THIS NOTICE

Your rights may be affected by the Settlement of the Federal and State Derivative Actions. The Parties have agreed upon terms to settle the Federal and State Derivative Actions and have signed the Stipulation setting forth the Settlement terms.

## II. SUMMARY OF THE STOCKHOLDER MATTERS SUBJECT TO THE SETTLEMENT

The Federal Derivative Action

The Federal Derivative Action was commenced by plaintiffs DeAngelis and Hegeman in

---

[1] All capitalized terms that are not otherwise defined shall have the same definitions as set forth in the Stipulation and Agreement of Settlement, dated \_\_\_\_\_ \_\_, 2019 and filed with the Court on _____ \_\_, 2019 (the "Stipulation").

the United States District Court for the District of Delaware with the filing of two separate but similar complaints on February 16, 2018. On February 22, 2018, Plaintiff Frashier Family Trust also filed a complaint in United States District Court for the District of Delaware containing allegations substantially similar to the complaints filed by DeAngelis and Hegeman.

On April 23, 2018, the United States District Court for the District of Delaware entered an order consolidating the related derivative actions and designating co-lead and co-liaison counsel. On June 1, 2018, plaintiffs DeAngelis, Hegeman, and Frashier Family Trust filed a verified consolidated derivative complaint ("Consolidated Complaint"). The Consolidated Complaint alleged that the Individual Defendants—current and former officers and directors of the Company—breached their fiduciary duties of loyalty and good faith by materially misrepresenting the true condition and business prospects of the Company's renewable business segment and failing to adequately oversee the Company's renewable business, wasted corporate assets, were unjustly enriched, and violated certain federal securities laws by causing the Company to repurchase its stock at artificially inflated prices and by causing the issuance of false and misleading proxy statements.

On June 28, 2018, the Federal Derivative Action was transferred to the United States District Court for the Western District of North Carolina and is pending before the Honorable Max O. Cogburn, Jr. The parties filed a motion to stay the Federal Derivative Action, which Judge Cogburn granted on August 13, 2018. As a condition of the stay, Defendants agreed to and have provided to plaintiffs DeAngelis, Hegeman, and Frashier Family Trust copies of documents produced by the defendants in the related federal securities class action currently pending in the United States District Court for the Western District of North Carolina, captioned *Ollila v. Babcock & Wilcox Enterprises, Inc., et al.*, Case No. 3:17-cv-00109-MOC-DCK.

The State Derivative Action

The State Derivative Action traces back to plaintiff Marks' demand for the inspection of certain Company books and records pursuant to title 8, section 220 of the Delaware General Corporation Law Code dated March 16, 2018 (the "Demand"). On March 30, 2018, counsel for B&W responded to the Demand, noting that the Company would produce certain non-privileged Board of Directors (the "Board") and Audit and Finance Committee's minutes and materials dated January 1, 2016 through March 16, 2018 (the "220 Materials"). The Company completed production of the 220 Materials on August 30, 2018.

On November 14, 2018, plaintiff Marks filed a verified stockholder derivative complaint in the State of North Carolina's General Court of Justice, Superior Court Division, County of Mecklenburg (the "*Marks* Complaint"). The *Marks* Complaint alleges that the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to adequately oversee the Company. These breaches, according to Plaintiff Marks, allowed the Company to: (i) disseminate false and misleading statements regarding its renewable business; and (ii) operate with deficient internal controls over financial reporting. Finally, the *Marks* Complaint alleges that the Individual Defendants were unjustly enriched as a result of compensation they received while they allegedly breached the fiduciary duties they owed to B&W. The parties to the State Derivative Action filed a joint motion to temporarily stay the case in order to facilitate settlement discussions, which Judge Conrad granted on April 10, 2019.

2

## III. REASONS FOR THE SETTLEMENT

The Parties have determined that it is desirable and beneficial that the Federal and State Derivative Actions and all of their disputes related thereto be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

### A. How Was the Settlement Negotiated?

On April 17, 2019, Plaintiffs' Counsel and counsel for the Individual Defendants held a mediation session in New York City. The Mediation was supervised by Michelle Yoshida of Phillips ADR ("Mediator"). Prior to the Mediation, the Parties exchanged mediation briefs addressing the claims, available defenses, and remedial issues. Plaintiffs' Counsel submitted a settlement demand to counsel for the Individual Defendants on April 10, 2019. Working with the Company, including current members of B&W's Board and its Chief Accounting Officer, counsel for the Individual Defendants responded to Plaintiffs' settlement demand with a counter-offer, which they presented to Plaintiffs' Counsel at the start of the Mediation. In addition to counsel for the Parties, a representative of the Company's insurer, and the insurer's counsel attended and participated in the mediation, and the Company's counsel consulted with the Company's General Counsel throughout the course of the mediation. Despite their good faith efforts, after a full day of hard fought, arm's-length negotiations, the Parties were unable to reach agreement on the substantive consideration for a settlement. At the end of the day, the Mediator issued a Mediator's recommendation to resolve the Federal and State Derivative Actions on the terms summarized herein, which the Parties accepted.

### B. Why Did the Plaintiffs Agree to Settle?

Plaintiffs believe that the claims asserted in the Federal and State Derivative Actions on behalf of B&W have merit. The Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Actions. Plaintiffs and Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of continued litigation as well as the difficulties and delays inherent in such litigation. Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of B&W and that it confers substantial benefits upon B&W and its stockholders.

### C. Why Did the Defendants Agree to Settle?

Defendants have denied, and continue to deny, each and all of the allegations made by the Plaintiffs in the Federal and State Derivative Actions and maintain that they have meritorious defenses thereto. Defendants also have denied and continue to deny, among other allegations, the allegations that B&W or any its stockholders were harmed in any way as a result of the conduct of the Individual Defendants alleged in the Actions. The Individual Defendants have further asserted and continue to assert that at all times they acted in good faith and in a manner they reasonably believed to be and that was in the best interests of B&W and its stockholders. Nonetheless, Defendants have concluded that further litigation may be protracted and expensive and that it is desirable that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Defendants have, therefore, determined that it is desirable that the Federal and State Derivative Actions be fully and finally settled in the manner

and upon the terms and conditions set forth in the Stipulation.

## IV.    TERMS OF THE PROPOSED SETTLEMENT

The terms and conditions of the proposed Settlement are set forth fully in the Stipulation. As part of the proposed Settlement, B&W has agreed to adopt practices, resolutions, and/or amend certain committee charters and/or the Company's Bylaws within forty-five (45) days of the Effective Date of the Settlement to ensure the adoption, implementation, and maintenance of the following corporate governance reforms (the "Reforms"), except as set forth below. The negotiated and comprehensive Reforms directly address certain of Plaintiffs' allegations in the Actions, are designed to reduce the likelihood that similar alleged wrongdoing that gave rise to the Actions recurs and strengthens the Company's overall corporate governance practices and internal controls generally. The Parties agree that the initiation, prosecution, and settlement of the Actions was the primary factor in the implementation of Reforms (A) through (I) set forth below and a significant factor in the adoption of the Reforms (J) through (Q) set forth below. The Parties further agree that the Reforms confer a substantial benefit to the B&W as part of the Settlement of the Actions.

The Reforms set forth below shall remain in effect for five years after the Settlement, except as otherwise set forth in the Stipulation.

A.    Enhanced Board Independence and Board Responsibilities

i.    At Least Two-Thirds of the Board Must Be Independent: The Company shall require that, at all times, at least 66% of the members of the Board are not Company executives and compliant with section (b) of the New York Stock Exchange ("NYSE") independence requirements set forth in NYSE corporate governance standards, section 303A.02, except for subsection (b)(iv); provided further that the composition of the Audit & Finance Committee shall meet all relevant NYSE independence requirements set forth in section 303A.02.

ii.    Mandatory Executive Sessions Meetings of the Independent Directors: The Independent Directors shall meet in executive session at least four (4) times annually outside the presence of management directors, in addition to the executive sessions required of specific committees of the Board as set forth below.

iii.    Mandatory Board Meetings: The Board shall meet at least once per quarter.

iv.    Chairman's Role in Setting the Agenda for Standard, Quarterly Board Meetings: The agenda for standard, quarterly Board meetings shall be established by the Chief Executive Officer ("CEO") and the final version of any such agenda shall not be distributed to the entire Board until the CEO has solicited the input of, received feedback from, and included any items sought to be included by the Chairman on the same.

v.    Enhanced Board Responsibilities for Oversight of Strategy and Planning: The Board shall at least annually and more frequently if circumstances or as good governance requires discuss the Company's long-term strategy development and implementation, including:

(a)     reviewing the process for development, approval and modification of the Company's strategy and strategic plan;

(b)     reviewing the key issues, options and external developments impacting the Company's strategy; and

(c)     monitoring enterprise risks that may affect the Company and assisting management of the Company in addressing such risks in the Company's strategic plan.

B.      Enhancements to Disclosure and Internal Controls Committee

The Board shall amend the Disclosure Committee's Charter, as reflected in Exhibit A attached hereto.

C.      Audit Committee Oversight of Disclosure and Internal Controls

The Audit Committee Charter shall be amended to ensure, among other things, that the Audit Committee more effectively supervises the Company's public disclosures as follows:

i.      The Audit Committee shall oversee the work of the Disclosure Committee. The Audit Committee shall meet separately with and review reports from management and the Disclosure Committee at least once each quarter and more frequently if necessary to effectively supervise the Company's disclosure function and specific disclosure issues of particular importance.  At least on a quarterly basis, the Audit Committee shall meet with the Chairman of the Disclosure Committee to review the Disclosure Committee's process and recommendations and to evaluate any concerns and recommendations the Disclosure Committee may have.

ii.      The Audit Committee shall, in conjunction with the Chair of the Disclosure Committee, review any financial statements, including, but not limited to, any Form 10-Q, Form 10-K, Form 8-K pertaining to financial statements, or annual proxy statement issued by the Company, to ensure sufficient material risk disclosures.  Prior to the issuance of earnings guidance, the Audit Committee shall review and approve any such guidance with the Disclosure Committee to ensure that proposed guidance has a reasonable basis and that all material risks and contingencies are properly disclosed.  This review shall include consideration of management representation letters.

iii.      The Audit Committee shall review at least quarterly the critical assumptions and material factors on which published financial forecasts or guidance are based, including those relating to the status of any of the Company's contracts/projects.  The Audit Committee shall oversee the decision-making pertaining to the potential modification or withdrawal of previously published forecasts or guidance.

iv.      The Audit Committee shall receive a written report from the appropriate member of management in any quarter in which a Red Team Review was conducted by the Company.  The written report shall include the meeting minutes from the Red Team Review(s).

v.      The Audit Committee shall, at least annually, meet with management, the head of the internal audit function, and the independent auditors.

vi.      The Audit Committee shall, at least annually, review and evaluate the capabilities and performance of the lead partner of the independent auditors and confirm the regular rotation of the audit partners.  The Audit Committee shall, at least quarterly, meet with management to review and discuss the Company's major financial risk exposures.

vii.      The Audit Committee shall review, in consultation with the full Board, reports from management regarding B&W's material risks and assess the efforts in place to manage such risks at least annually.

D.      Management Assessment of Disclosure and Internal Controls

i.      Management, including the CEO, Chief Financial Officer ("CFO"), and/or Chief Administrative Officer, shall annually assess the adequacy of the Company's internal controls, and, in consultation with the Disclosure Committee and the Audit Committee, shall report to the Audit Committee as to the same, and shall report in the Company's Annual Report on Form 10-K any identified material weaknesses, including (without limitation) material weaknesses concerning each of the following:

(a)      the communications process regarding the status, progress, costs, and prospects of the Company's pending contracts/projects; and

(b)      the Company's subcontractor reconciliation processes.

ii.      Should management identify any material weaknesses with regard to these or other controls, they shall take corrective action and/or recommend that the Board take corrective action.  Such corrective action and/or recommendations shall be summarized in the Company's Annual Report on Form 10-K.

E.      Enhanced Governance Committee Duties

i.      The Charter of the Governance Committee shall be amended to reflect the following additional duties and responsibilities:

(a)      The Governance Committee shall meet in person or telephonically at least once each quarter.

(b)      The Company shall publicly disclose the specific criteria for assessing director performance and skills.

(c)      In accordance with its duties to develop material principles of corporate governance and recommend such principles to the Board, the Governance Committee shall ensure that any agreed upon corporate governance principles or guidelines are widely available to the public, through the Company's website or otherwise.

6

F.    Enhanced Compensation Committee Duties

i.    The Charter of the Compensation Committee shall be amended to reflect the following additional duties and responsibilities:

(a)    The Compensation Committee shall continuously seek ways to improve the compensation structure for the Company's officers and directors to ensure compensation packages are competitive but not grossly excessive.

(b)    The Compensation Committee shall adopt measures by which executive compensation can be measured against strict, easy-to-understand performance criteria, and shall publish those measures in the Company's annual proxy statement for the preceding year as well as its assessment of performance against those measures, including use by the Compensation Committee of discretionary factors that allow the Compensation Committee to reduce executive compensation for poor performance and/or for causing B&W to undertake excessive risk, in a manner consistent with applicable SEC rules or listing standards. In particular, and among other things, the Board shall present this information in the Company's annual proxy statement in the Compensation Discussion & Analysis ("CD&A") section in a clear, easy-to-understand format, subject to applicable regulatory requirements. Further, the Board shall retain independent legal counsel at the Company's expense to review the quality, accuracy, and completeness of the Company's CD&A disclosures for the Company's annual proxy statements.

(c)    The Compensation Committee shall adopt measures by which incentive compensation shall be tied primarily to performance criteria, and length-of-service criteria shall be used sparingly, if at all. Incentive compensation also shall include risk adjustments where appropriate. Among other things, a percentage of the stock-based awards granted to the CEO and other section 16 officers shall be performance-based with such percentage being consistent with generally recognized compensation practices, and appropriate to the size and scope of the particular individual's position, and multiple long-term financial performance metrics consistent with the Company's long-term business plan must be utilized in determining what is ultimately earned.

(d)    A director shall not serve on the Compensation Committee for more than five (5) consecutive years.

(e)    B&W shall implement a standard practice, consistent with the independence of the Compensation Committee under applicable law, to allow a full Board discussion of B&W's compensation philosophy, programs and implementation on a periodic basis to improve the full Board awareness and understanding of executive compensation. At one Board meeting each year, the Board shall be briefed on the structure of B&W's executive compensation plans and the compensation philosophy upon which such plans are based.

(f)    Where B&W identifies a significant risk that potentially affects executive compensation in a material way, the Compensation Committee shall assess whether and how that risk should be assessed for compensation purposes.

7

(g)     B&W shall post the amended Compensation Committee Charter on its website.

G.     Site Visits and/or Onsite Inspections

i.     B&W shall require certain B&W management and at least one independent director to conduct at least one on-site inspection/visit each year of a significant project, as determined by the Board or a committee thereof. These visits will be conducted by Internal Audit and will be designed to help to educate senior management and the Company's directors regarding the operating culture of the field, and will provide them a better understanding what happens on site. Following each visit/inspection, Internal Audit or management shall prepare a report regarding the visit, which shall include a detailed summary of the visit, an explanation of how any information gathered may impact the Company's operations, and recommendations as to any changes that may be necessary or advisable. The term "Internal Audit" as used in this provision shall include any "Internal Audit" personnel that are engaged on an outsourced basis.

H.     Executive Reports

i.     At each regularly scheduled Board meeting, the Company's CFO (or his or her designee) shall provide a report as to the Company's financial condition and prospects, including, but not limited to, a discussion of all reasons for material increases in expenses and liabilities, if any, and material decreases in revenues and earnings, if any, management plans for ameliorating or reversing such negative trends and the success or failure of any such plans presented in the past. All Executive Vice Presidents and the CFO shall make reports to the Board regarding their respective areas of responsibility at least quarterly and shall meet at least annually with the non-employee directors of the Company.

I.     Continuing Director Education

i.     The Company shall implement and maintain a mandatory orientation and continuing education program designed to familiarize new directors with the Company, its management structure and operations, the industry in which the Company operates, and key legal, financial, and operational issues. Directors shall be provided with information regarding corporate governance and the structure and procedures of the Board and the committees on which the directors will serve.

ii.     At the Company's expense, provided such expenditure is reasonable, and subject to advance approval in writing by the Company's CEO or CFO, the directors shall periodically attend at least once every two years appropriate Company or external continuing director education programs to help them stay current on corporate governance, best Board practices, financial reporting practices, ethical issues for directors and management, and similar matters.

J.     The Company's retention of the services of a nationally recognized Project Management Consultant to assist with completion of certain U.K. Renewables Projects in the third quarter of 2018, which consultant reports directly to the Board.

K.     The adoption in the second quarter of 2018 of an enhanced process for documenting sub-contractor reconciliation on Babcock & Wilcox Volund A/S ("Volund") projects to address issues arising when Volund receives out of period sub-contractor invoices that exceed end of period estimates for services performed in prior period.

L.     The adoption of a new "Red Team Review" Procedure (Procedure No: B&W 1117-01, effective March 2, 2018), an additional independent, focused review of a proposal or project.

M.     The adoption of a new "Pricing Approval Request" Procedure (Procedure No: B&W 1118-01, effective March 2, 2018), which is designed to establish a consistent review and pre-approval process for proposals prior to submission to the customer.

N.     The adoption of a new "Project Scope Management" Procedure (Procedure No: B&W 1114-01, effective June 1, 2018), which defines the process for identification, classification, documentation, evaluation and authorization of deviations on all B&W projects.

O.     The adoption of a new "Project Risk and Opportunity Management" Procedure (Procedure No: B&W 1106-01, effective June 1, 2018), which is designed to provide guidance for implementation of project risk and opportunity management through the project lifecycle.

P.     The appointment of an additional independent director, non-defendant Kenneth Siegel, to the Board, effective September 6, 2018.

Q.     The appointment of a new CFO, non-defendant Louis Salamone, effective February 1, 2019.

## V.     ATTORNEY FEES AND EXPENSES FOR PLAINTIFFS' COUNSEL

To date, Plaintiffs' Counsel have not received any payments for their efforts or for the expenses they incurred on behalf of B&W and its stockholders.  Subject to court approval, Defendants have agreed for their insurer(s) to pay Plaintiffs' Counsel the aggregate amount of $1,000,000 as fees and expenses ("Fee and Expense Amount").  Any fee awarded by the Court is designed to compensate Plaintiffs' Counsel for the results achieved on behalf of the Company in response to the Federal and State Derivative Actions, and the fees and costs associated with the development, prosecution, and settlement of the Actions.  As part of the Settlement, Plaintiffs will each receive a service award of $1,500 to be paid out of the Fee and Expense Amount, subject to the Court's approval.

## VI.    DISMISSAL OF THE ACTION AND RELEASE OF CLAIMS

As part of the Settlement, the Parties to the Federal Derivative Action will jointly request the Court to enter the Order and Final Judgment that dismisses with prejudice all claims that Plaintiffs have alleged in the Federal Derivative Action.  Pursuant to the terms of the Stipulation

and after the entry of the Order and Final Judgment in the Federal Derivative Action, Plaintiff Marks will file a notice of voluntary dismissal in the State of North Carolina, County of Mecklenburg, requesting an Order dismissing with prejudice the case captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193. If approved by the Court, the Settlement will permanently bar and enjoin the institution and prosecution by any of B&W's stockholders on behalf of B&W against Defendants' Released Persons of any of Plaintiffs' Released Claims and any claims arising out of, relating to or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Federal and State Derivative Actions.

## VII.   SETTLEMENT HEARING

On _____ __, 2019 at __:__ _.m., a hearing (the "Settlement Hearing") will be held in the Federal Derivative Action before the Judge Max O. Cogburn, Jr. in the United States District Court for the Western District of North Carolina, 100 U.S. Courthouse Building, 100 Otis Street, Asheville, NC 28801 to: (i) determine whether the proposed Settlement of the Actions is fair, reasonable, and adequate and in the best interests of B&W and its stockholders; (ii) hear and rule on any objections to the proposed Settlement, including the attorneys' fees and expenses Defendants' insurer agreed to pay Plaintiffs' Counsel; (iii) determine whether to approve the agreed-to Fee and Expense Amount; and (iv) determine whether the Court should enter the Order and Final Judgment, attached as Exhibit E to the Stipulation, which would dismiss with prejudice the Federal Derivative Action and release the Plaintiffs' Released Claims and Defendants' Released Claims including any claims related to the Federal and State Derivative Actions that have been brought or could have been brought against the Defendants' Released Persons. If the Settlement is approved, you will be subject to and bound by the provisions of the Stipulation, the releases contained therein, and by all orders, determinations, and judgments, including the Order and Final Judgment, pertaining to the Settlement.

Pending final determination of whether the Settlement should be approved, all proceedings in the Federal Derivative Action and all further activity between the Parties regarding or directed toward the Federal Derivative Action, save for those activities and proceedings relating to the Stipulation and the Settlement, shall be stayed, and Plaintiffs and all B&W stockholders derivatively on behalf of B&W are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any of Plaintiffs' Released Claims against Defendants' Released Persons.

## VIII.   RIGHT TO ATTEND FINAL HEARING

You may enter an appearance in the Federal Derivative Action, at your own expense, individually or through counsel of your choice. If you want to object at the Settlement Hearing, then you must first comply with the procedures for objecting that are set forth below. The Court has the right to change the Settlement Hearing date or time without further notice. Thus, if you are planning to attend the Settlement Hearing, you should confirm the date and time before going to the Court. If you have no objection to the Settlement, you do not need to appear at the Settlement Hearing or take any other action.

## IX. THE PROCEDURES FOR OBJECTING TO THE SETTLEMENT

Any Current B&W Stockholder may object to the Settlement of the Actions, the proposed Order and Final Judgment, and/or the proposed Fee and Expense Amount, and may also (but need not) appear in person or by his, her, or its attorney at the Settlement Hearing. To object, any such stockholder must submit copies of: (a) a written statement identifying such person's or entity's name, address, and telephone number, and, if represented by counsel, the name, address, and telephone number of counsel; (b) proof of current ownership of B&W common stock, including the number of shares of B&W common stock and the date or dates of purchase; (c) a written statement explaining the person's or entity's objection and the reasons for such objection; and (d) any documentation in support of such objection. Any objection should not exceed 25 pages in length. If the stockholder wishes to appear at the Settlement Hearing, he, she, or it must also include a statement of intention to appear at the Settlement Hearing. **Such materials must be filed with the Clerk of the United States District Court for the Western District of North Carolina and sent by first class mail to the following addresses and postmarked no later than _____ \_\_, 2019 (21 days before the Settlement Hearing)**:

> Shane P. Sanders
> ROBBINS ARROYO LLP
> 5040 Shoreham Place
> San Diego, CA 92122
>
> Timothy Brown
> THE BROWN LAW FIRM, P.C.
> 240 Townsend Square
> Oyster Bay, NY 11771
>
> *Co-Lead Counsel for Plaintiffs in the Federal Derivative Action*
>
> Corey D. Holzer
> HOLZER & HOLZER, LLC
> 1200 Ashford Parkway, Suite 410
> Atlanta, GA 30338
>
> *Counsel for Plaintiff in the State Derivative Action*
>
>     -and-
>
> John L. Latham
> ALSTON & BIRD LLP
> 1201 West Peachtree Street NW
> Atlanta, GA 30309
>
> *Counsel for the Individual Defendants in the Federal and State Derivative Actions*
>
> David N. Kelley
> DECHERT LLP

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

*Counsel for Nominal Defendant Babcock & Wilcox Enterprises, Inc. in the Federal and State Derivative Actions*

Any person or entity who fails to object in the manner described above shall be: (i) deemed to have waived any objection to the Settlement, Order and Final Judgment, and Fee and Expense Amount; (ii) barred from raising such objection in the Federal and State Derivative Actions; and (iii) bound by the Order and Final Judgment and the releases of claims set forth therein.

Current B&W Stockholders who have no objection to the Settlement, Order and Final Judgment, or Fee and Expense Amount do not need to appear at the Settlement Hearing or take any other action.

## X.      HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Stipulation. This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation, which has been filed with the Court and may be viewed on the Investor Relations portion of B&W's website at: www.babcock.com/questions

Inquiries about the Federal and State Derivative Actions or the Settlement may be made to: Robbins Arroyo LLP, 5040 Shoreham Place, San Diego, CA 92122; The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, NY 11771; and Holzer & Holzer, LLC, 1200 Ashwood Parkway, Suite 410, Atlanta, GA 30338.

DATED: _____ __, 2019        BY ORDER OF THIS COURT
                                    UNITED STATES DISTRICT COURT
                                    WESTERN DISTRICT OF NORTH CAROLINA

<u>**DO NOT CONTACT THE CLERK OF THE COURT
REGARDING THIS NOTICE**</u>

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Lead No. 3:18-cv-00347-MOC-DCK
(Consolidated with Nos. 3:18-cv-00349-MOC-DCK and 3:18-cv-00350-MOC-DCK)**

| | |
|---|---|
| **IN RE BABCOCK & WILCOX ENTERPRISES, INC. SHAREHOLDER DERIVATIVE LITIGATION** | ) ) ) ) |
| | ) |
| **This Document Relates to:** | ) ) |
| **ALL ACTIONS.** | ) ) |

## SUMMARY NOTICE OF PROPOSED SETTLEMENT

**TO:** **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF COMMON STOCK OF THE BABCOCK & WILCOX ENTERPRISES, INC. ("B&W") WHO CURRENTLY OWN B&W COMMON STOCK AND WHO OWNED IT AS OF _____ __, 2019.**

   **PLEASE READ THIS SUMMARY NOTICE CAREFULLY AND IN ITS ENTIRETY AS YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THE LITIGATION.**

   **YOU ARE HEREBY NOTIFIED** that the above-captioned consolidated stockholder derivative action (the "Federal Derivative Action"), is being settled on the terms set forth in the Stipulation and Agreement of Settlement dated _____ __, 2019 (the "Stipulation"). The Settlement also settles and releases any claims that have been brought or may or could arise out of a derivative action captioned, *Pamela Marks v. E. James Ferland, et al.*, Case No. 18-CVS-21193 (N.C. Super. Ct.—Mecklenburg Cty.) (the "State Derivative Action") (together with the Federal Derivative Action, the "Actions"). This Summary Notice of Proposed Settlement ("Summary Notice") is provided by order of the United States District Court for the Western District of North Carolina (the "Court").

   The Federal Derivative Action alleges claims against each of the Individual Defendants[1] for breach of fiduciary duty and violations of the federal securities laws. The State Derivative

---

[1] All capitalized terms that are not otherwise defined shall have the definitions as set forth in the Stipulation.

Case 3:18-cv-00347-MOC-DCK   Document 56-3   Filed 08/02/19   Page 64 of 72

Action alleges claims against each of the Individual Defendants for breach of fiduciary duty.[2] Pursuant to the terms of the Settlement, B&W agrees to adopt practices, resolutions, and/or amend committee charters and/or the Company's Bylaws within forty-five (45) days of issuance of the Order and Final Judgment to ensure the adoption, implementation, and maintenance of certain corporate governance reforms (the "Reforms"). The Reforms shall be maintained for five (5) years, subject to certain terms and conditions set forth in the Stipulation. The Parties agree that the initiation, prosecution, and settlement of the Actions were primary and significant factors in B&W's adoption of the Reforms. The Parties further agree that the Reforms confer a substantial benefit to B&W as part of the Settlement.

The Defendants also agree for their insurer to pay attorneys' fees and expenses to Plaintiffs' Counsel in the total amount of $1,000,000 (the "Fee and Expense Amount"), subject to approval of the Court. As part of the Settlement, Plaintiffs will each receive a service award of $1,500 to be paid out of the Fee and Expense Amount, subject to the Court's approval. Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing asserted in the Federal and State Derivative Actions.

On _____ __, 2019, at __:__ _.m., a hearing (the "Settlement Hearing") will be held before Judge Max O. Cogburn, Jr. at the United States District Court for the Western District of North Carolina, 100 U.S. Courthouse Building, 100 Otis Street, Asheville, NC 28801 for the purpose of determining whether the Settlement should be approved as fair, reasonable, and adequate and whether the Fee and Expense Amount should be approved. ***Because this is not a class action, but is a stockholder derivative action brought for the benefit of B&W, except as otherwise provided for in the Stipulation with respect to the named plaintiffs, no Current B&W Stockholder has the right to receive any individual compensation as a result of the Settlement.***

This Summary Notice provides a condensed overview of certain provisions of the Stipulation and the full Notice of Proposed Settlement (the "Notice"). It is not a complete statement of the events of the Federal and State Derivative Actions or the terms set forth in the Stipulation. This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation. For additional information about the claims asserted in the Federal and State Derivative Actions, and the terms of the proposed Settlement, you may inspect the Stipulation and other papers at the Clerk's office in the Court at any time during regular business hours. In addition, copies of the Stipulation and the Notice are available on the Investor Relations section of the Company's website at www.babcock.com/questions. Inquiries about the Federal and State Derivative Actions or the Settlement may be made to: Robbins Arroyo LLP, 5040 Shoreham Place, San Diego, CA 92122; The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, NY 11771; and Holzer & Holzer, LLC, 1200 Ashwood Parkway, Suite 410, Atlanta, GA 30338.

You may enter an appearance before the Court, at your own expense, individually or through counsel of your choice. If you want to object at the Settlement Hearing, you must be a Current B&W Stockholder and you must first comply with the procedures for objecting that are

---

[2] Leslie Kass and Daniel W. Hoehn are not named as defendants in the State Derivative Action.

set forth in the Stipulation and its accompanying exhibits, including the Notice. **Any objection to any aspect of the Settlement must be filed with the Clerk of the Court no later than _____ __, 2019 (21 days before the Settlement Hearing)**, in accordance with the procedures set forth in the Stipulation and the Notice. Any objection may not exceed 25 pages in length. Any Current B&W Stockholder who fails to object in accordance with such procedures will be bound by the Order and Final Judgment of the Court granting final approval to the Settlement and the releases of claims therein, and shall be deemed to have waived the right to object (including the right to appeal) and forever shall be barred, in this proceeding or in any other proceeding, from raising such objection.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS SUMMARY NOTICE.**

3

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### Lead No. 3:18-cv-00347-MOC-DCK
### (Consolidated with Nos. 3:18-cv-00349-MOC-DCK and 3:18-cv-00350-MOC-DCK)

|  |  |
|---|---|
| IN RE BABCOCK & WILCOX ENTERPRISES, INC. SHAREHOLDER DERIVATIVE LITIGATION | )<br>)<br>) |
|  | )<br>) |
| This Document Relates to: | ) |
| ALL ACTIONS. | )<br>)<br>) |

## [PROPOSED] ORDER AND FINAL JUDGMENT

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement ("Preliminary Approval Order") of this Court dated _____ __, 2019, on the application of plaintiffs Mike DeAngelis, Dan Hegeman, and Bud and Sue Frashier Family Trust ("Plaintiffs") for approval of the settlement of the aforecaptioned action (the "Action") as set forth in the Stipulation and Agreement of Settlement dated as of _____ __, 2019, including all exhibits thereto (the "Stipulation"). Due and adequate notice having been given by Babcock & Wilcox Enterprises, Inc. ("B&W" or the "Company") and Plaintiffs to Current B&W Stockholders as required in the Court's Preliminary Approval Order, and the Court having considered all papers filed and proceedings held herein and otherwise being fully informed, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order and Final Judgment ("Judgment") incorporates herein the Stipulation, including the exhibits thereto. Unless otherwise defined herein, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2.     This Court has jurisdiction over the subject matter of the Action, and the Parties to the Stipulation have consented to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

3.     The record shows that Notice and Summary Notice have been given to all Current B&W Stockholders in the manner approved by the Court in the Preliminary Approval Order.  The Court finds that such Notice and Summary Notice: (i) constitute reasonable and the best notice practicable under the circumstances; (ii) constitute notice that was reasonably calculated, under the circumstances, to apprise all Current B&W Stockholders who could reasonably be identified of the pendency of the Federal and State Derivative Actions, the terms of the Settlement, and Current B&W Stockholders' right to object to and to appear at the settlement fairness hearing held on _____ __, 2019 (the "Settlement Hearing"); (iii) constitute due, adequate, and sufficient notice to all persons or entities entitled to receive notice in accordance with Rule 23.1(c) of the Federal Rules of Civil Procedure ("Rule 23.1(c)"); and (iv) meet the requirements of due process.

4.     In light of the benefits to the Company and the complexity, expense and possible duration of further litigation against the Defendants, the Court hereby fully and finally approves the Settlement, pursuant to Rule 23.1(c), as set forth in the Stipulation in all respects, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of B&W and its stockholders.  This Court further finds the Settlement as set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of B&W, B&W Stockholders, and the Individual Defendants.

5.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Stipulation.  The Action and all claims contained

therein, as well as all of the Plaintiffs' Released Claims, are dismissed on the merits and with prejudice. The Parties are to bear their own costs, except as otherwise provided in the Stipulation and in this Judgment.

6.     The Court finds that during the course of the litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, particularly with Rule 11(b) of the Federal Rules of Civil Procedure.

7.     Upon the Effective Date, the Plaintiffs' Released Persons and all other B&W stockholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, and discharged the Plaintiffs' Released Claims (including Unknown Claims) against Defendants' Released Persons. Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

8.     Upon the Effective Date, Defendants' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Defendants' Released Claims (including Unknown Claims) against Plaintiffs' Released Persons. Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

9.     The provisions contained in the Stipulation (including any exhibits attached hereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Federal and State Derivative Actions or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Parties may

file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10. The Court hereby approves the Fee and Expense Amount in the amount of one million dollars ($1,000,000).

11. Payment of the Fee and Expense Amount made by B&W's insurer(s) as specified in Paragraph 5 of the Stipulation shall be releasable to Plaintiffs' Counsel within ten (10) business days of the entry of the Judgment, notwithstanding the existence of any collateral attacks on the Settlement and/or the Fee and Expense Amount including, without limitation, any objections or appeals.

12. The Court hereby approves a service award of $1,500 to each of the Plaintiffs to be paid out of the Fee and Expense Amount.

13. If for any reason the Effective Date as set forth in the Stipulation does not occur, or if the Stipulation is in any way canceled or terminated or if this Judgment is successfully attacked collaterally, then the payment of the Fee and Expense Amount, and any and all interest accrued thereon since payment, shall be returned to B&W's insurance carrier within ten (10) business days of receiving notice from Defendants or from a court of appropriate jurisdiction in an amount consistent with such reversal or modification, the portion of the Fee and Expense Amount paid to them.

14. Plaintiffs and all B&W stockholders derivatively on behalf of B&W are permanently barred and enjoined from commencing, prosecuting, instigating, or in any way

4

participating in the commencement or prosecution of any action asserting any of Plaintiffs' Released Claims against any of Defendants' Released Persons.

15. Without affecting the finality of this Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Stipulation, the Settlement, and of this Judgment, to protect and effectuate this Judgment, and for any other necessary purpose. Plaintiffs, Defendants, and each Current B&W Stockholder are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the Stipulation, including the exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Judgment, the Court retains exclusive jurisdiction over any such suit, action, or proceeding.

16. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, this Judgment shall be vacated, and all orders entered and releases delivered in connection with the Stipulation and this Judgment shall be null and void, except as otherwise provided for in the Stipulation, and the Parties shall be returned to their respective positions immediately prior to the execution of the Stipulation.

17. Judgment shall be, and hereby is, entered dismissing the Action with prejudice and on the merits. The Court finds that this Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED: _____        _____
                                     THE HONORABLE MAX O. COGBURN, JR.

5